**CLERK'S OFFICE**
**A TRUE COPY**
Mar 03, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

|  |  |
|---|---|
| **Information Associated with Timing Advance "True Call" for all records and unique device/user identifiers pertaining to Timing Advance (see attachments).** | ) ) ) ) ) ) Case No. **23-M-303 (SCD)** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Wisconsin:

  See Attachment A.

I find that the affidavit(s) or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal:

  See Attachment B.

**YOU ARE COMMANDED** to execute this warrant ON OR BEFORE _____3-17-23_____ (*not to exceed 14 days*)
☐ in the daytime between 6:00 a.m. and 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Stephen C. Dries
                                                        *(United States Magistrate Judge)*

 Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)
  ☐for _____ days (not to exceed 30)      ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ____3-3-23. 8:40 am_____          _____
                                                              *Judge's signature*

City and State: Milwaukee, Wisconsin _____          Stephen C. Dries, U.S. Magistrate Judge

Case 2:23-mj-00303-SCD    Filed 03/03/23    Page 1 of 22    Document 1

AO 93 (mod. 5/14) Search and Seizure Warrant

| **Return** | | |
|---|---|---|
| Case No: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken and/or name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the undersigned judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date:

Date: _____

_____
*United States Magistrate Judge*

# ATTACHMENT A
## Property to Be Searched

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times, and geographical boundaries (*distance from the GPS points*):

1. Location #1

GPS Coordinates:  43.0209821, -87.9351885          Distance from Location: 0.30 Miles

Date: February 19, 2023          Time: 5:25 a.m. (CST) to 5:45 a.m. (CST)

2. Location #2

GPS Coordinates:  43.023634, -87.958986          Distance from Location: 0.20 Miles

Date: February 19, 2023          Time: 4:35 a.m. (CST) to 5:25 a.m. (CST)

3. Location #3

GPS Coordinates:  43.080235, -87.908104          Distance from Location: 0.30 Miles

Date: February 19, 2023          Time: 5:25 a.m. (CST) to 6:45 a.m. (CST)

4. Location #4

GPS Coordinates:  43.00634, -88.007011          Distance from Location: 0.30 Miles

Date: January 3, 2023          Time: 1:57 p.m. (CST) to 2:07 p.m. (CST)

12

**ATTACHMENT B**

**Items and Information to be Seized and Searched**

All information that constitutes evidence of a violation of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) committed on February 19, 2023, involving unknown persons, including location information and identifying information as specified below.

1.      **T-Mobile, Sprint, AT&T, Verizon** and **US Cellular** shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a.      the unique identifiers for each wireless device that generated a Timing Advance "True Call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI"), International Mobile Equipment Identities ("IMEI"), and the make and model of the device;

   b.      the starting and ending date/time of the connection along with the duration;

   c.      for each communication with the network the tower and the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

   d.      the service type for the communication; and,

13

e.    the estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

2.    These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3.    It is anticipated that identifying information will be requested for devices whose characteristics meet the following criteria:

a.    Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4.    However, it is noted that no subscriber information (including but not limited to name or phone number associated with the identifiers) or location information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.

14



CLERK'S OFFICE
A TRUE COPY
Mar 03, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

**Information Associated with Timing Advance "True Call" for all records and unique device/user identifiers pertaining to Timing Advance (see attachments).**

)
)
)
)
)
)

Case No. 23-M-303 (SCD)
_____

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

The application is based on these facts: See attached Affidavit.

Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Digitally signed by
RickHankins409017232-92997
DN: c=US, o=Sprint, ou=External,
ou=eSite,
cn=RickHankins409017232-92997
Date: 2023.03.01 16:35:42 -06'00'

Rick Hankins, Special Agent, ATF
_____
*Printed Name and Title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Date: 3-3-23
_____

_____
*Judge's signature*

City and State: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed Name and Title*

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular network that are in the possession, custody, and/or control of the following companies: (1) T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey;  (2) Sprint, a cellular service provider headquartered at 6200 Sprint Parkway, Overland Park, Kansas; (3) AT&T, a cellular service provider headquartered at 208 South Akard Street, Dallas, Texas; (4) Verizon, a cellular service provider headquartered at 1095 Avenue of the Americas, New York, New York; and (5) US Cellular, a cellular service provider headquartered at 8410 West Bryn Mawr Avenue, Chicago, Illinois. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile, Sprint, AT&T, Verizon and US Cellular to disclose to the government copies of the information further described in Attachment B.

2.      I am a Special Agent of the U.S. Department of Justice's ATF, currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That training included various legal courses related to constitutional law as well as search and seizure

authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4. In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 295 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,550 class hours of fire-related training. Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 223 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

5. I have previously applied for and received search warrants related to cell site data and other related cellphone company records.

2

6.      This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

8.      On February 19, 2023, at approximately 5:43AM, the Milwaukee Police Department responded to a shooting near 1727 West Mineral Street, Milwaukee, Wisconsin **("Location 1")**.  Upon their arrival, police subsequently located A.A., who had been shot multiple times.  A.A. was found lying on the front porch of XXXX South 18th Street and transported to a hospital.

9.      The Milwaukee Police Department later interviewed A.A. who stated he and his friend, C.B., were at Potawatomi Casino and then went to a party near South 34th Street and West Pierce Street in Milwaukee **("Location 2")**.  A.A. said he was driving a Chrysler 300 car that had been rented by his brother, who was later identified as M.A..  As he and C.B. left the party and were walking to the Chrysler 300, A.A. said they were approached by five unknown black male suspects (hereinafter "suspects") wearing ski masks and carrying firearms.  A.A. stated one

3

or more of the suspects struck him multiple times in the head with a firearm and demanded to know where "the money was." A.A. stated he told the suspects he did not know what they were talking about. A.A. further said the suspects went through his pockets and took his money, necklace, grills, cellphone **[phone # (262) 283-2021],** and keys to the Chrysler 300 rental car. A.A. said he and C.B. were then forced at gunpoint into the suspects' white SUV. A.A. stated the suspects drove them to C.B.'s address (Location 1) after C.B. provided his address. A.A. said the suspects exited the SUV, at which time he also exited the SUV and attempted to run away. A.A. stated he heard multiple gunshots and was struck multiple times in his leg, ankle, and foot. A.A. believed C.B. was targeted for the robbery because C.B. has posted social media videos in which C.B. had flashed a lot of money.

10. The Milwaukee Police Department also interviewed C.B, who was located at his residence - XXXX West Mineral Street. C.B. stated he posted a message on Facebook on February 18, 2023, asking if anyone wanted to go out. C.B. said he received a phone call from A.A., who he has known since high school. C.B. stated he and A.A. made plans to go out together. C.B. said A.A. picked him up in a 4-door Chrysler rental car. C.B. stated he, A.A., and their friend "Michael" first went to Element Nightclub in downtown Milwaukee and then to Potawatomi Casino. While at the casino, C.B. stated he received a phone call from a female he knew as "Pat" who invited him to a party near South 34th Street and West Pierce Street in Milwaukee. C.B. further said he is friends with "Pat" on social media. C.B. stated he and A.A. dropped Michael at home before going to the party. C.B. said he and A.A. stayed at the party for approximately 45-60 minutes (Location 2). As they were leaving the party and approaching A.A.'s Chrysler rental car, C.B. said two unknown vehicles stopped by them and five unknown male suspects exited one of the vehicles. All five were wearing masks. C.B. further said the

4

masked suspects pointed firearms at C.B. and A.A. and C.B. was struck in the head with firearms prior to being forced into the suspect vehicle. C.B. said the suspects went through his pockets and took $200 cash and his Apple iPhone **[number (414) 759-7872]**. C.B. said the suspects asked where they lived and C.B. provided his home address – XXXX West Mineral Street. C.B. further said A.A. fled the vehicle when they arrived at his address, so he also fled from the vehicle, ran into XXXX West Mineral Street, and did not come out until police arrived.

11. The Milwaukee Police Department recovered (24) 9mm ammunition casings from the shooting scene near 1727 West Mineral Street.

12. On February 19, 2023, at approximately 6:45AM, the Milwaukee Police and Fire Departments responded to a vehicle fire at 227 East Townsend Street, Milwaukee, Wisconsin **("Location 3")**. The burned vehicle was identified as a 2020 grey Chrysler 300 with WI license plate #11294AFT (VIN # 2C3CCAGG3LH146281), which was the same vehicle rented on February 18, 2023, by M.A. from Enterprise Car Rental located 5300 South Howell Avenue in Milwaukee, Wisconsin. A 911 caller stated they observed a black male suspect standing near the vehicle within seconds of the vehicle being engulfed in flames. The black male was wearing black clothing with a black face mask. Under these circumstances, I believe the rental car was a vehicle used in interstate commerce that was intentionally destroyed by means of fire.

13. The (24) 9mm ammunition casings recovered from the 1727 West Mineral Street shooting scene were later examined by an ATF National Integrated Ballistic Information Network (NIBIN) Correlation Specialist who determined the 24 ammunition casings were fired from two separate firearms. Furthermore, the NIBIN Correlation Specialist found that one of the firearms used during the 1727 West Mineral Street shooting also showed a significant correlation to a firearm used during a shooting in West Allis, Wisconsin on January 3, 2023. The West Allis

5

Police Department recovered (7) 9mm ammunition casings near 7527 West Becher Street, West Allis, Wisconsin **("Location 4")** following a reported shooting near that address at approximately 2:00PM on January 3, 2023 (West Allis Police Department Case #23-000288). The NIBIN correlation between the two shooting scenes and the recovered casings have not yet been confirmed by microscopic comparison, but the similarities are significant and resulted in a NIBIN Hit.

14. On February 28, 2023, ATF interviewed C.B. and C.B. stated the party near 34th Street and Pierce Street was held inside a photography studio on the first floor of a commercial building. C.B. used digital Google Streetview images on Your Affiant's cellphone and initially identified 3530 West Pierce Street as the building where the party was held. Additionally, C.B. said an unknown Hispanic male traveled with C.B. and A.A. to the party. C.B. stated the unknown Hispanic male was an associate of A.A. who they ran into earlier that same night.

15. Also on February 28, 2023, ATF Agents canvassed the area of 3530 West Pierce Street and found that address to be a U-Haul self-storage building. ATF Agents then contacted a remodeling construction crew that working at the commercial building located at 3600 West Pierce Street. The construction crew stated that 3600 West Pierce Street had a photography studio on the first floor, which was unlocked and open. ATF Agent also contacted a resident at XXXX South 36th Street who had exterior surveillance cameras that faced toward the intersection of West Pierce Street and South 36th Street, and also captured the front door of 3600 West Pierce. Agents viewed the surveillance video from February 19, 2023, and observed the 2020 Chrysler 300 arrive at approximately 4:36AM and park immediately across the street from the front door of 3600 West Pierce Street. Three individuals exited the Chrysler and subsequently entered 3600 West Pierce Street. The surveillance video also captured a white Jeep

SUV travel past 3600 West Pierce Street on three occasions between 4:43AM and 4:46AM. I believe the same white Jeep SUV backed into the north/south alley between 3600 West Pierce Street and 3530 West Pierce Street at approximately 4:54AM. The surveillance camera showed C.B., A.A., and the unknown male exit 3600 West Pierce Street at approximately 5:17AM and walk to the Chrysler 300. A.A. had opened the driver's door and C.B. was near the middle of West Pierce Street when four suspects emerged from the area of the white Jeep SUV and appeared to point firearms at C.B. and A.A. and the unknown male at which time they were ordered to the ground. The video showed suspects remove the shirt from C.B. and leave it in the road. The video further showed C.B. and A.A. were ushered by the suspects into the white Jeep SUV while the unknown third male appeared to be placed in the Chrysler 300. The white Jeep SUV then traveled south on South 36th Street followed by the Chrysler 300, which was presumably driven by a suspect.

16. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

17. As noted above, A.A.'s cell phone number ending in 2021 (service provider Sprint Spectrum) and C.B's cell phone number ending in 7872 (service provider T-Mobile) were possessed by A.A. and C.B. at Location 2 (the after set party) prior to the robbery. I believe that records detailing the location information exists for both phones following the robbery that will further assist in my investigation, most notably the identification of the five male suspects. Further, based on my training and experience, I know that cell phones are ubiquitous and are almost certain to have been used by one or more of the suspects prior to, at or around the time of

7

the robbery, and at or around the time the rental car was intentionally destroyed by fire. Thus, obtaining device/user identifiers and location information from the cellular service providers noted for the listed dates, times, and geographical boundaries will assist in identifying the suspects.

18. In my training and experience, I have learned that T-Mobile, Sprint, AT&T, Verizon and US Cellular are companies that provides cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's estimate distance from a particular cell tower and the provider's network derived location of the device in latitude and longitude.

19. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The

8

types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

20. Based on my training and experience, I know that cellular providers, such as T-Mobile, Sprint, AT&T, Verizon and US Cellular routinely and in their regular course of business maintain historical cell-tower log information, including records identifying wireless communications that were transmitted through a particular cell tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device that sent or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the cell tower(s) that handled the communication as well as the "sectors" (i.e. the faces of the towers) that received a radio signal from the locally served wireless device; and the type of communication transmitted (such as phone call or text message).

21. Furthermore, cellular providers such as T-Mobile, Sprint, AT&T, Verizon and US Cellular in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device'); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the estimated distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, also known as True Call, that is captured and controlled by cellphone service providers.

9

22.     Based on my training and experience and the above facts, information obtained from cellular service providers such as T-Mobile, Sprint, AT&T, Verizon and US Cellular reveal cell towers (and, where applicable, sector) that were used and the estimated location information (the estimated distance from the tower and sector and estimated latitude and longitude) of a given cellular device to engaged in a particular communication  or interaction with the cellular network can be used to show that the device was in the general vicinity of the cell tower or an estimated location at the time the communication or network interaction occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

a.  Location 1 – 1727 West Mineral Street, Milwaukee, Wisconsin, on February 19, 2023, from approximately 5:25 a.m. (CST) – 5:45 a.m. (CST);

b.  Location 2 – 3600 West Pierce Street, Milwaukee, Wisconsin, on February 19, 2023, from approximately 4:35 a.m. (CST) – 5:25 a.m. (CST);

c.  Location 3 – 227 East Townsend Street, Milwaukee, Wisconsin, on February 19, 2023, from approximately 5:25 a.m. (CST) – 6:45a.m. (CST); and

d.  Location 4 – 7527 West Becher Street, West Allis, Wisconsin, on January 3, 2023, from approximately 1:57 p.m. (CST) – 2:07 p.m.

23.     Probable cause exists to believe that the records requested contain evidence related to identifying the unknown individuals who committed violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony).

## AUTHORIZATION REQUEST

24.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

10

25.     I further request that the Court direct T-Mobile, Sprint, AT&T, Verizon and US Cellular to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, Sprint, AT&T, Verizon and US Cellular, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## ATTACHMENT A
## Property to Be Searched

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times, and geographical boundaries (*distance from the GPS points*):

1. <u>Location #1</u>

GPS Coordinates:  43.0209821, -87.9351885          Distance from Location: 0.30 Miles

Date: February 19, 2023          Time: 5:25 a.m. (CST) to 5:45 a.m. (CST)

2. <u>Location #2</u>

GPS Coordinates:  43.023634, -87.958986          Distance from Location: 0.20 Miles

Date: February 19, 2023          Time: 4:35 a.m. (CST) to 5:25 a.m. (CST)

3. <u>Location #3</u>

GPS Coordinates:  43.080235, -87.908104          Distance from Location: 0.30 Miles

Date: February 19, 2023          Time: 5:25 a.m. (CST) to 6:45 a.m. (CST)

4. <u>Location #4</u>

GPS Coordinates:  43.00634, -88.007011          Distance from Location: 0.30 Miles

Date: January 3, 2023          Time: 1:57 p.m. (CST) to 2:07 p.m. (CST)

12

**ATTACHMENT B**

**Items and Information to be Seized and Searched**

All information that constitutes evidence of a violation of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) committed on February 19, 2023, involving unknown persons, including location information and identifying information as specified below.

1.    **T-Mobile, Sprint, AT&T, Verizon** and **US Cellular** shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a.    the unique identifiers for each wireless device that generated a Timing Advance "True Call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI"), International Mobile Equipment Identities ("IMEI"), and the make and model of the device;

    b.    the starting and ending date/time of the connection along with the duration;

    c.    for each communication with the network the tower and the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

    d.    the service type for the communication; and,

13

e. the estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3. It is anticipated that identifying information will be requested for devices whose characteristics meet the following criteria:

a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4. However, it is noted that no subscriber information (including but not limited to name or phone number associated with the identifiers) or location information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **T-Mobile/Sprint/AT&T/Verizon/US Cellular**, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **T-Mobile/Sprint/AT&T/Verizon/US Cellular** The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **T-Mobile/Sprint/AT&T/Verizon/US Cellular**, and they were made by **T-Mobile/Sprint/AT&T/Verizon/US Cellular** as a regular practice; and

b.      such records were generated by **T-Mobile/Sprint/AT&T/Verizon/US Cellular** electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **T-Mobile/Sprint/AT&T/Verizon/US Cellular** in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by **T-Mobile/Sprint/AT&T/Verizon/US Cellular**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

15

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

| | |
|---|---|
| Date | Signature |